Aaron Bernstein v. Commissioner.
Bernstein v. Commissioner
Docket No. 35925.
United States Tax Court
1953 Tax Ct. Memo LEXIS 330; 12 T.C.M. (CCH) 297; T.C.M. (RIA) 53090; March 20, 1953
*330 1. Petitioner, keeping no books and records, computed his sales and expenses as reported on his tax returns for the taxable years from his bank account transactions. Respondent determined certain amounts of income were omitted by petitioner during 1942, 1943, and 1944. Held, the amount of sales not deposited by petitioner and, therefore, not included in his income determined from the evidence for each year. 2. Held, petitioner liable for fraud penalties for each of the three taxable years. Vincent B. Lewin, Esq., for the petitioner. Conway N. Kitchen, Esq., for the respondent. BLACK Memorandum Findings of Fact and Opinion The respondent has determined deficiencies in petitioner's income tax, and 50 per cent additions thereto under section 293 (b) of the Code for fraud, as follows: Income Tax
50% Addition
Year
Deficiency
for Fraud
1942
$ 60,311.01
$ 30,155.50
1943
194,039.25
97,019.63
1944
150,875.34
75,437.67
Totals
$405,225.60
$202,612.80
*331 On his individual income tax returns for each of the taxable years petitioner reported net income as follows: Year
Net income as disclosed per return
1942
$ 9,310.26
1943
21,285.18 (Income tax net income)
1944
19,156.60
As explained in the notice of deficiency, for each year respondent would make certain adjustments which would increase the net income as disclosed by the return. Respondent's adjustments to net income may be summarized as follows: Additional income or unallowable deductions
1942
1943
1944
Unreported sales
$83,698.88
$213,429.59
$ 96,266.35
Purchases per return overstated by
2,600.00
8,886.00
77,600.00
Business expenses per return disallowed
2,700.00
2,620.00
2,500.00
Contributions disallowed
200.00
400.00
400.00
Miscellaneous taxes disallowed
150.00
Proposed addition to reported net income
$89,198.88
$225,485.59
$176,766.35 By appropriate assignments of error petitioner contests each of the adjustments to net income. Two issue are presented for our decision: (1) whether respondent erred in determining the net income of petitioner for each year, and if so, then we must determine from the evidence *332 what is the correct net income, and (2) whether respondent erred in determining a 50 per cent fraud penalty against petitioner for each of the taxable years. Findings of Fact Petitioner is an individual living in the Bronx, New York City. Petitioner's Federal income tax returns for the taxable years 1942, 1943, and 1944 were filed with the Collector of Internal Revenue for the 14th District of New York. During the taxable years petitioner was married to Rae Bernstein. Petitioner was born in 1886. During the taxable years petitioner was engaged in the watch business as a sole proprietor using the names, Palace Watch Co. and Aaron Bernstein. Petitioner has been in the watch business for 31 years. Beginning in 1921 or 1922, he was engaged in that business under the firm name of Bernstein & Chatelain with offices at 87 Nassau Street and at 116 Nassau Street. That firm was dissolved in 1930 or 1931. For the last 15 years he has been located at 11 John Street and prior thereto he was at 49 Maiden Lane. During the taxable years petitioner was an agent for two Swiss watch manufacturers and imported some watches himself through S. H. Pomerance Co., custom brokers, whose records show that *333 the petitioner made payments to them in 1943 and 1944 of approximately $40,000. The only income reported by petitioner on his tax return consisted of the net profits from the Palace Watch Co. For the calendar year 1942, the net profit was computed on the tax return as follows: Total receipts
$128,382.28
Less: Cost of goods sold: Inventory 1/1/42
$ 1,388.30
Merchandise bought for sale
116,297.79
Goods available for sale
117,686.09
Less: Inventory 12/31/42
2,823.50
114,862.59
Gross profit
$ 13,519.69
Less: Business deductions
Taxes
$ 27.86
Commissions and selling expenses
2,716.40
Telephone and cables
302.13
Accounting and legal
715.04
Rent
123.00
3,884.43
Net profit
$ 9,635.26
For the calendar year 1943, petitioner computed his net profits as reported on his return as follows: Total receipts
$494,795.61
Less: Cost of goods sold: Inventory 1/1/43
$ 2,823.50
Merchandise bought for sale
483,450.84
Goods available for sale
486,274.34
Less: inventory 12/31/43
17,042.00
469,232.34
Gross profit
$ 25,563.27
Less: Business deductions
Charity
$ 242.70
Telephone
108.45
Accounting
578.75
General Expense
2,679.52
Stationery
18.67
3,628.09
Net profit
$ 21,935.18
*334 On his tax return for the year 1944, petitioner reported his business income as follows: Total receipts
$321,034.95
Less: Cost of goods sold
Inventory 1/1/44
$ 17,042.00
Merchandise bought for sale
290,704.04
Goods available for sale
307,746.04
Less: Inventory 12/31/44
12,345.15
295,400.89
Gross profit
$ 25,634.06
Less: Business deductions
Advertising
$ 158.00
Legal and accounting
1,710.00
Telephone
221.40
Sundry exp.
2,683.28
4,772.68
Net profit
$ 20,861.38
Petitioner's business was conducted in an office, a small room with just enough space for a desk and for displaying samples. His rent deduction in 1942, for example, was only $123 for the year. Petitioner had no employees working in his business. Petitioner kept no books for his business and the only records of the business consisted of an incomplete set of duplicate sales invoices. No explanation was given for the absence of checks or receipts in substantiation of petitioner's expenses. Petitioner described himself on his tax returns as a jobber of watch movements, he bought watch movements from importers and sold them to wholesalers. During the taxable years petitioner bought *335 watch movements from Emil Leichter, Crawford Watch, Consolidated Continental Corp., Ever-Rite Watch & Jewelry Co., Greenwich Watch & Jewelry Co., Evkob Watch Co., Welsbro Watch Co., L. Friedman, and Langer Watch Co. Generally, petitioner would first secure an order for watches from the wholesaler, then he would secure the watches from an importer. Sometimes petitioner would call the importer and purchase the watches ordered in the presence of the wholesaler. Petitioner sold watch movements to many customers. Most of the watches imported by petitioner himself were sold to the armed forces through the procurement offices of the Army, Navy, Marines, and other branches. Petitioner's physical inventory of watch movements, that is, watches in his possession was nominal in amount. Inventories per tax returns varied between $1,300 and $17,000. These reported inventories represent the merchandise which was in transit at the end of the year. Petitioner's accountant, who prepared the tax returns, considered the advances made by petitioner to importers on merchandise in transit as merchandise inventory. Petitioner's tax returns for each of the three taxable years were prepared by a certified *336 public accountant who failed to sign the returns as required by Regulations 111, section 29.51-4(b). The accountant was not a witness at the hearing, it was stated that the accountant was then in Europe on a vacation. The accountant prepared petitioner's tax returns from a bank account used by petitioner in his business. The bank account was kept in the name of Rae Bernstein, petitioner's wife, and it was a checking account with The Public National Bank and Trust Company. In preparing each tax return, the accountant used reconciliation sheets to convert bank deposits for the year into sales per returns and to convert checks written for the year into purchases and other expenses. Certain other adjustments were made in the reconciliation, such as for inventories. None of the three reconciliation sheets are in evidence, but the testimony is to the effect that only minor adjustments were made in the reconciliation sheets for the years 1942 and 1943. On the reconciliation sheet for 1944, in addition to the sales as reflected by deposits in the bank account, there was listed cash receipts of $81,000, and there was also listed $72,600 in cash purchases. By reason of these adjustments petitioner *337 included in his gross profit, $8,400 which would not have been included therein had the return been prepared in the same manner as tax returns for prior years, that is, prepared in such a way as to reflect only the bank account transactions. The only evidence presented by petitioner consisted of the testimony of petitioner himself. His testimony was to the effect that he was merely a commission man, making 50 cents to $1.00 per watch or watch movement, and that all his commissions were included in the net income reported on his income tax returns. Petitioner made no attempt to explain how he reported his share of the income of Weissman & Bernstein, a joint venture. His testimony about the joint venture was confined to his contention that he had a 25 per cent instead of a 50 per cent interest in the joint venture. Petitioner also testified that the premiums received for watches, which premiums were not deposited, were turned over to the importers from whom petitioner acquired the watches. Petitioner made no effort to subpoena these importers and none of them testified at the hearing. Petitioner, keeping no books on his sole proprietorship, computed its annual net profit from the *338 bank account of the business. The business receipts, at least in the amounts reported on petitioner's 1942 and 1943 tax returns, were computed from the total amount of bank deposits made during those years. Thus, any business receipts not deposited to the bank account would not have been included in petitioner's sales as reported on his tax returns. Certain receipts of petitioner's business, apparently consisting primarily of premiums received in excess of O.P.A. ceiling prices, were not deposited into the bank account. In the preparation of the 1944 tax return, however, certain adjustments were made to the bank account totals; for example the sum of $81,000 was added to the bank deposits in order to compute the amount of receipts reported on the tax return. The $81,000 adjustment was made to include in sales per return the business receipts which were never deposited to the business bank account. Even after taking into consideration the $81,000 adjustment in arriving at sales per tax return, petitioner's sales were still understated on the 1944 tax return for we find that for the taxable year the undeposited receipts of the business were in excess of $97,000. These undeposited receipts, *339 as set forth for the years 1942, 1943, and 1944 subsequently in our Findings of Fact, constitute additional taxable income which was not reported by the petitioner in his returns. In determining the amount of the deficiencies herein we are faced with the problem of finding what is the net income of petitioner for each of the years 1942, 1943, and 1944. As pointed out above, there are no records of petitioner's business or of the joint venture heretofore mentioned from which his net income can be computed. As has already been noted, petitioner, in each of the taxable years, filed returns and reported considerable net income. We are convinced, however, that he fell short of reporting all of his income in each of the taxable years. On the other hand, we are convinced from the evidence that respondent in his determination of the deficiencies has exaggerated petitioner's net income in each of the taxable years. Our task is to determine from the evidence petitioner's net income in each of the taxable years. This is not an easy task considering the unsatisfactory record which we have before us. Petitioner's failure to keep books and records correctly reflecting his income is inexcusable. *340 He is evidently a man of considerable business experience and must have known that it was his duty to keep books and records by which his net income could be determined with reasonable accuracy. Respondent in his notice of deficiency determined petitioner's tax liability on the basis of net income reported on petitioner's returns, as corrected for certain items. The principal adjustment of respondent to the net income for the taxable years 1942, 1943, and 1944 relates to unreported sales, that is, receipts which were not deposited by petitioner in the bank account of the business. For the taxable year 1944, in addition to the principal adjustment based on unreported sales, respondent also disallowed a substantial amount of purchases claimed by petitioner on his return. The adjustments as contained in the deficiency notice are set forth in our preliminary statement. Based upon checks drawn by petitioner's customers, we find that petitioner had undeposited receipts for the taxable years in the following amounts: Year
Amount
1942
$22,333.23
1943
15,048.00
1944
47,698.00 The above amounts are computed from the following checks: Date
Drawer
Amount
6/ 9/42
Bernard Seidlitz
$ 41.65
10/ 1/42
Leo Popper
3,000.00
10/ 9/42
Leo Popper
11,432.00
10/29/42
Leo Popper
30.60
11/ 3/42
Cypress Watch Co.
540.00
11/ 4/42
Cypress Watch Co.
1,440.00
11/19/42
Cypress Watch Co.
1,272.00
11/21/42
Cypress Watch Co.
1,211.00
12/ 5/42
Verifine Watch Supply Co.
155.17
11/ 5/42
Verifine Watch Supply Co.
155.16
5/25/42
Verifine Watch Supply Co.
38.00
10/ 6/42
Reliable Watch Co.
321.00
9/ 2/42
Emil Lichter
350.40
10/21/42
Emil Lichter
806.25
6/25/42
Emil Lichter
600.00
6/26/42
Emil Lichter
532.00
8/27/42
Emil Lichter
408.00
Total for 1942
$22,333.23
2/17/43
Verifine Watch Supply Co.
$ 62.00
7/ 6/43
Emil Lichter
375.00
10/28/43
J. Frackman
3,000.00
9/ 8/43
S. Frackman & Sons
300.00
9/10/43
S. Frackman & Sons
1,152.00
9/28/43
S. Frackman & Sons
990.00
10/ 4/43
S. Frackman & Sons
1,500.00
10/ 4/43
S. Frackman & Sons
100.00
10/ 5/43
S. Frackman & Sons
2,500.00
10/29/43
S. Frackman & Sons
1,190.00
12/ 9/43
S. Frackman & Sons
2,200.00
12/10/43
S. Frackman & Sons
48.00
12/13/43
S. Frackman & Sons
1,631.00
Total for 1943
$15,048.00
8/12/44
Verifine Watch Supply Co.
$ 2,000.00
7/29/44
Emil Lichter
3,522.00
7/24/44
Crow Watch Co.
2,050.00
9/14/44
J. Frackman
2,205.00
2/ 1/44
J. Frackman
1,000.00
3/ 3/44
J. Frackman
1,950.00
3/15/44
J. Frackman
1,925.00
3/20/44
J. Frackman
1,352.00
3/24/44
J. Frackman
420.00
7/13/44
J. Frackman
1,031.00
7/19/44
J. Frackman
2,375.00
9/ 9/44
J. Frackman
2,200.00
8/21/44
J. Frackman
1,900.00
8/30/44
J. Frackman
4,636.00
9/ 5/44
J. Frackman
2,800.00
10/ 7/44
J. Frackman
2,000.00
1/ 4/44
S. Frackman & Sons
1,050.00
1/ 6/44
S. Frackman & Sons
2,400.00
1/27/44
S. Frackman & Sons
700.00
3/13/44
S. Frackman & Sons
2,394.00
3/24/44
S. Frackman & Sons
288.00
4/28/44
S. Frackman & Sons
2,200.00
6/27/44
S. Frackman & Sons
2,200.00
7/19/44
S. Frackman & Sons
900.00
8/ 9/44
S. Frackman & Sons
2,200.00
Total for 1944
$47,698.00
*341 In addition to the proceeds from checks issued to cash, the Frackmans delivered cash premiums personally to petitioner in payment for watches and watch movements in 1943. As the payments were made to petitioner a record of the amounts was kept by the Frackmans on the invoices for the watches. The following premiums were paid by the Frackmans in cash: Cash premiums as
Date of payment
shown by invoices
10/ 7/43
$ 1,800.00
10/20/43
3,000.00
10/22/43
694.00
10/27/43
286.00
11/ 2/43
3,100.00
11/ 4/43
1,800.00
11/15/43
174.20
12/ 6/43
2,000.00
12/ 8/43
3,225.00
12/21/43
950.00
Total
$17,029.20
Likewise, during 1944, S. Frackman & Sons and J. Frackman made similar cash payments to petitioner for watches and watch movements. Cash premiums were paid by the Frackmans as follows: Cash premiums as
Date of Payment
shown by invoices
1/ 4/44
$ 4,000.00
1/25/44
5,808.00
1/27/44
744.00
1/28/44
955.50
1/29/44
637.50
1/31/44
1,000.00
2/ 7/44
139.50
3/ 8/44
550.00
3/ 8/44
2,200.00
3/13/44
1,950.00
3/16/44
4,179.25
3/22/44
300.00
3/28/44
750.00
3/29/44
1,300.00
3/31/44
275.00
4/22/44
2,100.00
5/31/44
612.50
5/12/44
1,600.00
5/12/44
1,900.00
5/23/44
3,800.00
5/24/44
920.00
6/14/44
550.00
6/27/44
1,050.00
6/28/44
1,050.00
6/29/44
258.40
7/ 5/44
1,900.00
7/ 6/44
342.00
7/10/44
950.00
7/11/44
2,100.00
9/13/44
2,205.00
9/15/44
140.00
9/29/44
1,938.00
9/29/44
705.00
10/ 5/44
900.00
Total
$49,809.65
*342 In the deficiency notice respondent determined additional sales of $96,266.35 for the taxable year 1944, to be added to net income of petitioner on the grounds that such sales were unreported sales. Such sales were considered unreported sales because petitioner had not deposited the cash receipts of that amount. In the preparation of petitioner's tax return, however, to reflect undeposited receipts the sum of $81,000 was arbitrarily added to bank deposits by petitioner. Respondent failed to take into consideration the $81,000 adjustment already made by petitioner, and in so doing the respondent erred. Accordingly, we find the proper adjustment to sales per return for 1944 to be $16,507.65. Since petitioner kept no books, and since petitioner's records were incomplete, the respondent's special agent conducted his audit of petitioner's tax returns by soliciting information from other sources. The special agent requested all of petitioner's known customers to submit a transcript of their business with petitioner. He also contacted the other New York City concerns in the watch trade. In addition, the special agent obtained information about the bank accounts, savings accounts, and *343 safe deposit boxes of petitioner and his wife. The only business bank account maintained by petitioner during the taxable years involved herein was the Rae Bernstein account with The Public National Bank and Trust Company. Deposits during the years 1942, 1943, and 1944 as shown on the Rae Bernstein bank deposit tickets consisted only of deposits of checks and there were no currency deposits except that out of a total deposit on April 17, 1942 of $1,744, the amount of $1,000 was in currency and that out of a total deposit on June 12, 1942 of $1,975, the amount of $3.00 was in currency, and with the further exception that currency in the total amount of $6,017 was deposited in 1943. Over ceiling cash payments received by the petitioner from the sale of watches and watch movements, as well as cash obtained by the petitioner or his wife through endorsement of customers' checks, were not deposited in the business bank account (except the small amounts heretofore noted) and were not included by the petitioner in his taxable income in his income tax returns for 1942, 1943, and 1944. During the taxable years 1942 and 1944, substantial deposits were made to the savings accounts of petitioner *344 and his wife. After a careful consideration of all the evidence, the following schedules show the net income which we have determined for petitioner, including that reported by him on his return, for each taxable year: 1942 Net income per tax return
$ 9,310.26
Add: 1. Purchases adjustment made by respondent
$ 2,600.00 *
2. Business expenses disallowed
2,700.00 *
3. Contributions disallowed
200.00 *
4. Undeposited checks, unreported receipts
22,333.23
5. Unreported income from joint venture
16,825.00 **
44,658.23
Net income for 1942
$53,968.49
1943 Net income per tax return (income tax net income)
$21,285.18
Add: 1. Purchases disallowed by respondent
$ 8,886.00 *
2. Business expenses disallowed
2,620.00 *
3. Contributions disallowed
400.00 *
4. Miscellaneous taxes disallowed
150.00 *
5. Checks not deposited representing unreported receipt
15,048.00
6. Undeposited cash receipts
17,029.20
44,133.20
Net income for 1943
$65,418.38
1944 Net income per tax return
$19,156.60
Add: 1. Business expenses disallowed
$ 2,500.00 *
2. Contributions
400.00 *
3. Undeposited receipts, checks
$47,698.00
Undeposited receipts, cash
49,809.65
97,507.65
Less amount already reported
81,000.00
16,507.65
4. Purchases disallowed
5,000.00
24,407.65
Net income for 1944
$43,564.25
*345 A portion of the deficiencies for each of the taxable years 1942, 1943, and 1944 is due to fraud with intent to evade tax. Opinion BLACK, Judge: As we have explained in our preliminary statement, two issues are presented for our decision. What Is the Amount of Net Income We now consider the first issue. In the deficiency notice respondent made numerous adjustments to the net income reported on the return for each taxable year. Petitioner in his petition alleges that each adjustment in the deficiency notice is erroneous. In his answer respondent denied each of these assignments of error. After reviewing the record, we find that the evidence before us relates to only four of the many adjustments proposed in the deficiency notice, and hereinafter we shall discuss separately each of the four adjustments. Since petitioner failed to introduce evidence in support of his other allegations of error, the burden of proof being on petitioner, these other adjustments as made in the deficiency notice are accepted as being correct. The four adjustments in issue are: (1) Unreported sales - year 1942
$ 83,698.88
(2) Unreported sales - year 1943
213,429.59
(3) Unreported sales - year 1944
96,266.35
(4) Purchases per 1944 return over-
stated by
77,600.00
*346 The profit and loss statements of petitioner's business for each taxable year, which statements were attached to petitioner's tax returns, have been set forth in our Findings of Fact. In our preliminary statement we set forth the amounts of net income as reported by petitioner on each of his tax returns, and also set forth in our preliminary statement are the adjustments thereto as made by the respondent in the deficiency notice. Petitioner's net income for each of the taxable years according to the deficiency notice as determined by respondent was quite substantial in amount, namely: Year
Amount
1942
$ 98,509.14
1943
246,770.77
1944
195,922.95 It is apparent from the record that these amounts of net income as determined by respondent in his deficiency notice are very substantially overstated. Therefore, from the evidence presented, we have determined what appears to us to be the correct amount of net income as near as we can determine it for each of the taxable years. We have set forth in our Findings of Fact each of the adjustments to reported net income which we think are proper from the record in computing the correct taxable net income. In lieu of the *347 $83,698.88 adjustment to reported net income as made in the deficiency notice for unreported sales in 1942, we think that the following two adjustments are proper: (1) include the amount of $22,333.23 for undeposited receipts, and (2) include in petitioner's net income his share of income earned in the joint venture. Very little evidence was presented in regard to the amount of joint venture earnings and in regard to what was petitioner's share of those earnings. The evidence relating to the amount of earnings consists primarily of the testimony of a special agent of the Bureau of Internal Revenue. He prepared an exhibit which was submitted in evidence summarizing the petitioner's share of joint venture profits as including (1) $8,973.70 in cash, and (2) $7,851.30 in customers' checks. These two amounts apparently represent a total of certain items, with each item being substantiated by supporting data. In the absence of other evidence, we accept respondent's summary, adding to petitioner's net income $16,825 based upon the earnings of the joint venture. Petitioner's net income as reported on his 1942 tax return was understated also, as we have already stated, by $22,333.23 by *348 reason of undeposited receipts. These receipts consist of 19 checks as itemized in our Findings of Fact which were received by petitioner during 1942 in payment for merchandise sold. These checks are called "undeposited checks" because they were not deposited in the petitioner's business bank account. Since these checks were not deposited and because petitioner's bank account in the absence of books and records was used as the basis for preparing his tax return, they were not included in the receipts reported by petitioner on his 1942 income tax return. Petitioner contends that these checks did not constitute a part of his sales for they were received by him as agent and were turned over to his principals. Petitioner testified, and now argues, that he was merely a conduit for the premiums paid in excess of ceiling prices for watches and watch movements. The evidence before us indicates otherwise. The checks were made out to the order of "A. Bernstein" the petitioner with no mention of an agency. Certain of these checks were exchanged for cash. Many other checks, in fact most of the checks received by petitioner in his business, were deposited to a bank account listed in the name of *349 petitioner's wife. The handling of receipts in payment for merchandise in this manner is not the usual act of an agent. Petitioner's testimony is contrary to the other evidence. While we cannot accept petitioner's testimony, neither can we accept respondent's determination that in 1942 petitioner omitted sales in the amount of $83,698.88. Respondent has submitted no evidence, no explanation, in support of an addition of such an amount to sales as reported on the tax return. Instead, the evidence presented at the hearing supports an addition in the amount of $22,333.23. We hold that this amount is the proper amount to be added to reported sales in order to include therein unreported sales. Petitioner makes the same contentions for 1943 that he did for the year 1942. Respondent determined in the deficiency notice that unreported sales were $213,429.59 for the year 1943. This amount, contends respondent, must be added to the net income reported by petitioner on his tax return. The fact situation in respect to unreported sales is not unlike that in 1942. Petitioner prepared his tax return in the same manner, and, as in 1942, he failed to include all his sales on the 1943 tax return. *350 These omissions from sales and the amount thereof are determined from the evidence and are set forth in our Findings of Fact. In accordance with the Findings of Fact, we determine that certain sums were received by petitioner in payment for merchandise sold, that these sums were omitted by petitioner from sales or gross receipts as reported on his tax return for 1943 in the following amounts: (1) the sum of $15,048 consisting of undeposited checks, and (2) the sum of $17,029.20 consisting of undeposited cash. The third and fourth adjustments in question relate to the year 1944. The determination of the amount of petitioner's net income for 1944 is a somewhat more difficult task than that presented in the two earlier years. This is so because of the manner in which petitioner's 1944 income tax return was prepared. Sales and purchases in the amounts reported on the tax return were not taken directly from the bank account of the business as was the case in the other tax returns. Instead, in computing the amounts reported on the 1944 tax return, to the bank account amounts there were arbitrarily added, $81,000 to sales and $72,600 to purchases. Petitioner at the hearing called our attention *351 to this fact but failed to explain the purpose of the adjustments. They may have been for the purpose of taking into account: (1) undeposited cash sales and cash purchases, or (2) undeposited checks received from customers and cash purchases, or (3) cash premiums received and paid out by petitioner in excess of O.P.A. ceiling prices. Respondent in the deficiency notice disallowed the $72,600 which had been added to petitioner's purchases, yet no corresponding adjustment was made in the deficiency notice to eliminate the $81,000 adjustment which had been made to petitioner's sales. Instead, to the sales reported on petitioner's return, respondent added in the deficiency notice the amount of $96,266.35. Supposedly, this amount consisted of the total of undeposited receipts. The cumulative effect of these two adjustments to sales, that is, the $81,000 and the $96,266.35, is that over $177,000 would be added to bank deposits in determining the correct amount of petitioner's sales for the taxable year. We think that such an addition is excessive, and likewise it is apparent from the evidence that the $81,000 addition made to deposits in preparation of petitioner's return is insufficient *352 to correct for all the unreported sales of petitioner for the taxable year. We think the proper adjustment to net income per return for unreported sales is $16,507.65 as shown in our Findings of Fact. We hold accordingly. The fourth adjustment in question, involving also the year 1944, relates to the $72,600 adjustment arbitrarily added to purchases in preparing the tax return. In the notice of deficiency the adjustment, that is, the amount of purchases disallowed amounted to $77,600. No explanation for the $5,000 difference has been given. However, after considering the entire record, we are satisfied that the $72,600 in premiums was in fact paid to petitioner's suppliers. We, therefore, hold that to the extent of $72,600 respondent erred. Fraud We shall now consider the fraud issue. The determination of fraud by respondent places upon him the burden of proving fraud, section 1112 of the Code, and in order to establish "fraud with intent to evade tax," [1] the evidence must be clear and convincing, , affirmed . To discharge his burden of proof here, respondent called to the witness stand by subpoena, *353 ten representatives of various watch concerns to whom petitioner sold watches and watch movements during the taxable years. The witnesses testified concerning petitioner's sales of watches and watch movements to them and they recounted details of specific payments for merchandise which were made to petitioner, partly by check and partly by delivery of cash to him. In substantiation of their testimony, the witnesses produced canceled checks, invoices, and other memoranda from the books and records of their businesses. By other evidence in the record, the respondent establishes that these cash payments, or substantial parts thereof, were not accounted for by petitioner in his returns for the taxable years. Also called by respondent as witnesses were employees representing five banks. They testified concerning the existence of checking accounts, savings accounts, safety deposit boxes, and deposit tickets of petitioner and of Rae Bernstein, petitioner's wife. Transcripts or photostats of the accounts are in evidence. In addition, Samuel Weissman, who was also called under subpoena as a witness by respondent, testified that he had a 50 per cent *354 interest in a joint venture with petitioner. According to Weissman's testimony, the joint venture, which was engaged in importing watches, was in business for about 6 months. Weissman's testimony was corroborated by the joint venture bank account which was used in financing the watches purchased. The account was opened on July 16, 1942, and a little over 4 months later, on November 18, 1942, the account balance was reduced to only $228.04, and thereafter there was little or no activity in the account. No reference to this joint venture is made in petitioner's 1942 income tax return. Petitioner has made no effort to explain why he failed to include his share of the joint venture earnings in the net income he reported on his 1942 tax return. Examining the exhibits in evidence, we find that substantial deposits were made to the savings accounts during the years in question, particularly during 1942. Petitioner offers no explanation of the sources of these deposits, and it appears that these funds were not withdrawn from the business bank account. [2] It is established by the respondent, however, that during this same period petitioner was receiving substantial sums of cash from his customers *355 in payment for merchandise. Moreover, respondent identified by evidence a $3,000 check, which was received by petitioner in payment for merchandise sold, as being a part of a $3,500 deposit made in the East River Savings Bank savings account on October 1, 1942. On another occasion, petitioner applied towards the purchase price of a $500 Series E war bond, a $321 check which petitioner had received from a customer in payment for merchandise. Since neither of these two checks were deposited to petitioner's business bank account, neither of them were included in the sales as reported on his tax returns. The fact that these checks were invested by petitioner also serves to contradict petitioner's contention that he was acting only as agent in these sales transactions. Petitioner contends that even though sales as reported on his tax returns were understated, whatever amount is properly to be added to reported sales in order to include therein the omissions, a like amount must also be added to his purchases. Such an adjustment to purchases would offset the addition to sales, and the net effect would be no change in the petitioner's net income. This adjustment to purchases is proper, contends *356 petitioner, because all premiums collected upon the sales of watches were turned over to suppliers from whom he purchased watches. Such payments, even though they include premiums paid in excess of O.P.A. ceiling prices, may be included by petitioner in his cost of goods sold, . Petitioner, however, has failed to establish the essential fact that the payments were in fact made to his suppliers. For his proof, petitioner relies only on his own testimony that the premiums were used "to pay for merchandise that I bought," and that "I paid for the merchandise I got." Ordinarily, such a fact might be established by the books and records, but petitioner kept no books and very few records for his business during the taxable years. The fact that the payments were actually made by petitioner might also be proved by the testimony of witnesses, but the suppliers of petitioner, to whom the cash allegedly was paid, were not subpoened and did not testify, though they were in business in New York City. Petitioner's testimony amounted to nothing more than selfserving declarations that his returns were correct as filed. It is clear here from the evidence that *357 certain receipts were omitted from the tax returns, and we note that the tax returns were made under oath, or under penalty of perjury. We are not compelled to find for a taxpayer merely because he testifies that his return as filed is correct. Cf. , affirmed (C.A. 2, 1949) . In view of all the evidence presented, we cannot find as a fact that which was testified to by petitioner, namely, that the cash receipts collected from his customers were turned over in toto to his principals. Petitioner received certain premiums from the Frackmans, from Benny Kalisher, and pershaps from other customers too for selling them merchandise. Premiums were being paid for watches and watch movements during the taxable years since, at this time, they were in short supply. Certain premiums were shown to be sales of petitioner by means of relating payments received by petitioner to the corresponding payments made on purchases by petitioner's customers, as recorded in their books and records. By this affirmative evidence, respondent has established that petitioner received these premiums, or receipts from sales, and further, it has been *358 established that these sales were not reported by petitioner on his tax returns. After examining all the evidence, we are convinced, and we hold, that petitioner failed to report in his sales per tax return these premiums even though these premiums constituted a part of his sales during the taxable years. Petitioner failed to keep books and records as required of taxpayer by section 54 of the Code and applicable Treasury regulations issued under the special authority granted by that section. The violation of this Code provision, when considered in the light of the fact that petitioner failed each taxable year to include in his income substantial sums of cash receipts, is strong evidence that petitioner was possessed with a fraudulent intent to evade tax. We have found as a fact, after considering the entire record, that a part of the deficiency for each year is due to fraud with intent to evade tax. Accordingly, respondent did not err in determining against petitioner a 50 per cent addition to the tax deficiency as provided by section 293 (b) of the Code. The deficiencies must be determined in a recomputation under Rule 50 in accordance with our Findings of Fact. The penalties will *359 also be recomputed under Rule 50. Decision will be entered under Rule 50. Footnotes
*. Petitioner introduced no evidence relative to these adjustments made by respondent. ↩
**. Petitioner's share of the joint venture income according to the contention of respondent.↩
*. Petitioner introduced no evidence relative to these adjustments made by respondent.↩
1. See section 293 (b) of the Code.↩
2. Had the receipts from sale of merchandise first been deposited to petitioner's business bank account, the receipts solely by reason of their deposit would have been included in the sales reported by petitioner in his tax returns. This is true here because of the manner in which petitioner's tax returns were prepared. Since no books and records were kept, sales as reported on the returns were computed from total bank deposits for the taxable year. ↩